UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAWRENCE J. GITMAN AND MICHAEL D. JOEHNK, on behalf of themselves and all others similarly situated,

            Plaintiffs,

v.

PEARSON EDUCATION, INC., PEARSON PLC, and PEARSON, INC.,

            Defendants.



OPINION AND ORDER

14 Civ. 8626 (GBD)

GEORGE B. DANIELS, United States District Judge:

    Plaintiffs Lawrence J. Gitman and Michael D. Joehnk (collectively "Plaintiffs") are emeritus university professors who are the authors of widely used finance textbooks. Plaintiffs filed this putative class action against their publisher Defendant Pearson Education, Inc. ("Pearson Education") for breach of contract and breach of implied covenant of good faith and fair dealing. Plaintiffs allege that Pearson Education breached the terms of their publishing agreements by engaging in sale practices that reduce the royalty payment owed to them. Plaintiffs allege that these sale practices result in Pearson Education owing more than $470,000 in additional royalties and millions of dollars to the proposed class. Plaintiffs also sued Defendants Pearson PLC, the parent company of Pearson Education, and Pearson, Inc., a wholly-owned subsidiary of Pearson PLC, for intentional interference with contract. Plaintiffs allege that Pearson PLC and Pearson, Inc. interfered with the publishing agreements between the authors and Pearson Education by participating in these sale practices that prevented them and other similarly-situated authors from reaping the full benefit of their publishing agreements.

Pearson Education, Pearson PLC, and Pearson, Inc. (collectively "Defendants") moved to strike the class allegations in the Complaint, arguing that a class in this case could never be certified because each publishing agreement that could possibly be in dispute is too different to establish commonality. Defendants also moved to dismiss for failure to state a claim all but one of Plaintiffs' allegations in support of Plaintiffs' breach of contract claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants further moved to dismiss Plaintiffs' breach of implied covenant of good faith and fair dealing claim against Pearson Education, and their intentional interference with contract claim against Pearson PLC and Pearson, Inc.

Defendants' Motion to Strike the Class Allegations is DENIED. Defendants' partial motion to dismiss certain allegations in support of Plaintiffs' breach of contract claim is DENIED.

Plaintiffs' breach of implied covenant of good faith and fair dealing and intentional interference with contract claims are dismissed. Defendants Pearson PLC and Pearson, Inc. are dismissed from this case.

## I. Background[1]

### a. The Publishing Agreements

At the center of this contract dispute are five publishing agreements that Plaintiffs signed with Pearson Education.[2] Each agreement has a standard form and layout, and contains similar language with attached amendment riders, and strikethroughs notated on the agreement. In each publishing agreement, the rights and obligations of the parties are essentially the same: Plaintiffs,

---

[1] The following factual allegations are taken from Plaintiffs' Complaint unless otherwise indicated, and are deemed to be true for the purposes of a motion to dismiss. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

[2] Harper & Row Publishers and Addison Wesley Longman are the actual signatories to the five agreements, but through a series of mergers and acquisitions, Pearson Education is the successor-in-interest of both Harper & Row Publishers and Addison Wesley Longman. (See Compl. ¶ 24, ECF 1.)

as the authors, grant to Pearson Education the exclusive right to print, publish, and sell their work. (See Compl., Exs. A–E.) In return, Plaintiffs should receive a royalty based on the type of sale. For sales in the United States or Canada, which are domestic sales, the authors should receive a royalty of 15% or 18% on the actual amount received by Pearson Education. Id. For export sales, Plaintiffs should receive a royalty of 10%. In addition, Pearson Education agrees to publish the work "at its own expense in such style and manner as the Publisher considers best suited to its sale . . . ." (Id., Exs. A–D.)

### b. Plaintiffs' Allegations

Plaintiffs allege that Pearson Education breached the publishing agreements by engaging in several sale practices, which can be grouped into three categories: Pearson Education's (i) export sales, (ii) kit and custom editions sales, and (iii) discounted domestic sales. For the export sales, Plaintiffs allege that according to a recent audit of their royalty statements, Pearson Education breached the publishing agreement by improperly categorizing certain sales as export sales when the textbook never left the United States. Plaintiffs allege that this occurs when Pearson Education sells the textbook to another Pearson entity controlled by Pearson PLC or Pearson, Inc., and the actual exporting of the textbook happens when the Pearson entity sells it to an unrelated third-party. Plaintiffs allege that Pearson Education engages in this sale practice to take advantage of the lower royalty rate of 10% for export sales instead of paying 15% or 18% for domestic sales.

Plaintiffs also allege that Pearson Education breached the publishing agreements by failing to use its best efforts to sell the textbook directly to unrelated third parties. Plaintiffs allege that Pearson Education is selling the textbook to a Pearson entity at a lower price than what that Pearson entity would later sell it for to an unrelated third-party. The royalty rate is assessed only on the sale between Pearson Education and the Pearson entity; not on the sale between the Pearson entity

and the unrelated third-party. Plaintiffs argue that this sale practice is preventing them from receiving the full benefit of the sale of their work because the royalty rate is assessed on the lower price of the textbook.

Another sale practice that Plaintiffs allege breaches the publishing agreements is Pearson Education's kit and custom edition sales. Plaintiffs allege that Pearson Education breached the agreements by selling the textbooks as part of a kit without authorization.[3] To the extent kit sales are permitted, Plaintiffs allege that Pearson Education breached the agreement by systematically inflating the value of the royalty-free portion of the kit (i.e. the other study guide material attached to the textbook) while decreasing the value of the textbook. In addition, Plaintiffs allege that with the custom editions, Pearson Education assigns an unreasonably high value to the additional material, which is not assessed a royalty, and a low value to the textbook component. In sum, both sale practices lower the basis upon which the royalty rate will be assessed for their work.

For the third category, Plaintiffs allege that Pearson Education is arbitrarily discounting certain domestic sales in order to avoid paying the full royalty rate of 15% or 18% for those sales. For discounted domestic sales, Pearson Education is required to pay only a 5% or 10% royalty rate. Plaintiffs allege that the recent audit of their statements reveals that they were only paid a 2.5% royalty for some sales. Pearson Education does not dispute the sufficiency of this allegation as stating a claim for breach of contract. Pearson Education concedes that such an allegation, if true, would constitute a breach of the publishing agreements because the lowest royalty rate for discounted sales is 5%. However, Pearson Education disputes that it is arbitrarily discounting domestic sales. Pearson Education argues that these allegations, and Plaintiffs' other allegations

---

[3] Specifically, out of the five agreements attached to Plaintiffs' Complaint, only one agreement expressly authorizes the sale of the textbook as part of a kit. (See Compl. ¶ 44.)

regarding the "export" sales and kit and custom sales, fail to show how Pearson Education breached an express term of the publishing agreements.

## II. Defendants' Motion to Strike the Class Allegations Under Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D)

Under Federal Rule 12(f), the court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.'" Fed. R. Civ. P. 12(f); see Lynch v. Southampton Animal Shelter Found., Inc., 278 F.R.D. 55, 63 (E.D.N.Y. 2011). Under Federal Rule 23(d)(1)(D), a party may move to strike class allegations in a complaint if "the complaint demonstrates that a class action cannot be maintained." Hovsepian v. Apple, Inc., No. 08-5788, 2009 U.S. Dist. LEXIS 117562, at *5 (N.D. Cal. Dec. 17, 2009).

However, "[m]otions to strike 'are not favored . . . .'" Lynch, 278 F.R.D. at 63 (quoting Crespo v. N.Y.C. Transit Auth., No. 01-CV-0671, 2002 U.S. Dist. LEXIS 2977, at *34 (E.D.N.Y. Jan. 7, 2002)). "A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification." Belfiore v. Procter & Gamble Co., No. 14-CV-4090, 2015 WL 1402313, at *4 (E.D.N.Y. Mar. 20, 2015) (quoting Ironforge.com v. Paychex, Inc., 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010)). "Accordingly, district courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, where a more complete factual record can aid the court in making this determination." Winfield v. Citibank, N.A., 842 F. Supp. 2d 560, 573 (S.D.N.Y. 2012); see Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) ("Generally speaking . . . motions of this kind are deemed procedurally premature.").

### a. Defendants' Motion to Strike the Class Allegations Is Procedurally Premature

Defendants' main argument for striking the class allegations is that Plaintiffs cannot establish commonality among the putative class members. In their Complaint, Plaintiffs define the putative class as "themselves and all other authors . . . who, as of the date of this Complaint, have entered into publishing contracts with Pearson Education . . . and (i) had Pearson Education purport to sell their works for 'export,' and/or (ii) had Pearson Education purport to sell their works as part of a 'kit' . . . ." (Compl. ¶ 56.) Defendants argue that this Court could never certify a class of this magnitude because every author in this potential class, which could be tens of thousands of authors, has a different publishing agreement with Pearson Education with a unique bargaining history and course of performance.

This Court cannot determine at this stage solely on the allegations in the Complaint that Plaintiffs will be unable to establish commonality to pursue claims as a class. Pearson Education may be able to demonstrate after conducting appropriate discovery that the class as it is alleged cannot be certified. Perhaps there will be issues of commonality and predominance that would preclude certification. However, at this stage, there is nothing in Plaintiffs' Complaint to suggest that a class could never be certified. A narrower class may be more appropriate than what Plaintiffs allege where the authors in that class have the same rights and responsibilities under their publishing agreements. However, "[t]he question of whether the putative class members meet the commonality requirements . . . will be further considered after appropriate discovery." Belfiore, 2015 WL 1402313, at * 5.

Pearson Education's other arguments — that the putative class of authors suffered different injuries under their publishing agreements, and that Pearson Education may have breached the publishing agreement in different ways — are not compelling reasons to strike the class

allegations, nor to preclude class certification in general. See Englade v. HarperColllins Publs., 289 A.D.2d 159, 160 (N.Y. App. Div. 2001) (holding that authors having different levels of damages did defeat class certification).

### III. Defendants' Motion to Dismiss for Failure to State a Claim Under Federal Rule 12(b)(6)

To survive a motion to dismiss, the complaint must contain sufficient facts that when accepted as true, "state[s] a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In deciding a motion to dismiss, the court must take a two-pronged approach. First, the court must accept as true all the factual allegations contained in the complaint. See id. at 679. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Second, the court must determine whether the well-pleaded factual allegations state a plausible claim for relief. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In deciding a motion to dismiss, the district court may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in [the plaintiff's] possession or of which [the plaintiff's] had knowledge and relied on in bringing suit." Chambers v. Time Warner, Inc., 282 F.3d 147, 153

(2d Cir. 2002). However, the plaintiff must have relied on the terms and effect of a document in drafting the complaint; "mere notice or possession is not enough." Id.

### a. Pearson Education's Motion to Dismiss All But One of Plaintiffs' Breach of Contract Allegations Is Procedurally Improper

Pearson Education seeks to dismiss all but one of Plaintiffs' breach of contract allegations, leaving only a sliver of the complaint for Plaintiffs to pursue under this cause of action. Pearson Education does not contest the sufficiency of Plaintiffs' allegation that receiving a 2.5% royalty on certain discounted domestic sales would constitute a breach of the publishing agreements. Pearson Education acknowledges that the lowest royalty rate that Plaintiffs could receive on discounted domestic sales is 5%, and any royalty rate less than that would be contrary to an express term in the agreements.[4] However, Pearson Education argues that all of the other allegations — the "export" sales, the kit and custom editions sales, and the other allegations pertaining to the discounted domestic sales — even if true, are not expressly prohibited by any term of the publishing agreements.

This Court finds no reason to narrow or tailor Plaintiffs' theories of liability under this claim if the breach of contract claim survives on at least one allegation, especially at the pleading stage before Plaintiffs are allowed to conduct appropriate discovery to support other theories. Pearson Education's motion may be more appropriately characterized as a motion to strike allegations from the complaint, and Pearson Education provides no compelling reason to strike any of these allegations as immaterial or impertinent under Federal Rule 12(f).

Moreover, even if those allegations were assessed under the Iqbal standard, this Court cannot determine as a matter of law that Plaintiffs fail to state a breach of contract claim as to each

---

[4] Pearson Education is confident that it will ultimately prove that Plaintiffs were receiving a 2.5% royalty based on 50% of the work, and a 5% royalty for 100% of the work; therefore, not breaching the agreement as alleged. (See Oral Arg. Tr. 66–67, ECF No. 28.)

allegation. It is unclear from the five publishing agreements attached to the Plaintiffs' Complaint what Pearson Education is permitted to do under the publishing agreement with regard to each specific allegation. See Advanced Mktg. Grp., Inc. v. Bus. Payment Sys., LLC, 300 Fed. App'x 48, 49 (2d Cir. 2008) (holding that dismissal of a breach of contract claim at the pleading stage is appropriate if the contract language is unambiguous). For example, regarding Plaintiffs' allegations about reducing the royalty basis on kit sales, only one of the five agreements expressly permit Pearson Education to sell Plaintiffs' work in a kit. (See Compl. ¶ 44, Ex. E, at 2–3.) The other four publishing agreements are silent as to this right. And although Plaintiffs allege that they seek to sue Pearson Education for selling their work in a kit, Plaintiffs may not have objected to these kit sales if Pearson Education did not allegedly lower the royalty basis on their sales. (See Compl. ¶ 44; Oral Arg. Tr. 116–20, ECF No. 28.) Therefore, it is also unclear at this juncture whether Pearson Education's sale practices breached the publishing agreements. Understanding the rights and obligations under these publishing agreements would require more than a basic reading of their provisions.[5]

### b. Plaintiffs' Breach of Implied Covenant of Good Faith and Fair Dealing Claim Is Duplicative of Their Breach of Contract Claim

Plaintiffs seek to plead their breach of implied covenant of good faith and fair dealing claim as an alternative to their breach of contract claim. Plaintiffs argue that to the extent the below-market valuations of Plaintiffs' work do not constitute a breach of any express term of the

---

[5] Another example is Plaintiffs' allegation that Pearson Education breached the publishing agreement by failing to use its best efforts to sell the textbook directly to unrelated third parties. (See Compl. ¶ 8.) Plaintiffs argue that this sale practice breaches the provision that Pearson Education agrees to publish the work "at its own expense in such style and manner as the Publisher considers best suited to its sale . . . ." (Id., Exs. A–D.) Again, it is unclear what "best suited to its sale" means, whether this is an obligation on Pearson Education as the publisher to sell the textbook at the highest price possible or whether this gives Pearson Education discretion to sell the textbook at any price. (See Oral Arg. Tr. 106–111.)

publishing agreements, Pearson Education should be liable for acting in bad faith by selling Plaintiffs' works for below-market value.

However, many courts in this Circuit have rejected this alternative pleading theory, holding that "an implied covenant does not offer an alternate remedy to a contract claim . . . ." Ret. Bd. of the Policemen's Annuity & Benefit Fund v. Bank of N.Y. Mellon, 11 Civ. 5459, 2014 U.S. Dist. LEXIS 105805, at *11–12 (S.D.N.Y. July 30, 2014); see Spread Enters. Inc. v. First Data Merch. Servs. Corp., No. 11-CV-4743, 2012 U.S. Dist. LEXIS 119080, at *13 (E.D.N.Y. Aug. 22, 2012) (holding that a breach of the covenant of good faith and fair dealing claim is not an alternative theory to a breach of contract claim if they are based on the same allegations). "[P]arties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract."  Spread Enters. Inc., 2012 U.S. Dist. LEXIS 119080, at *7 (citing Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002)).  Therefore, "an implied covenant claim is not distinct from a concurrently pled breach of contract claim unless it is based on different factual allegations." Ret. Bd. of the Policemen's Annuity & Benefit Fund, 2014 U.S. Dist. LEXIS 105805, at *12.

Plaintiffs do not allege a different set of facts to support their breach of implied covenant of good faith and fair dealing claim, and thus, cannot plead this claim as an alternative.  Therefore, Plaintiffs' breach of implied covenant of good faith and fair dealing claim is dismissed as duplicative of their breach of contract claim.

### c. Plaintiffs Fail to State a Claim for Intentional Interference with Contract

Plaintiffs' only claim against Pearson PLC and Pearson, Inc. is their third cause of action for intentional interference with contract.  Plaintiffs allege that Pearson PLC and Pearson, Inc. interfered with the publishing agreements between Plaintiffs and Pearson Education by "(i)

participating in the sham bookkeeping entries reflecting 'export' sales that never actually occurred, and (ii) engaging in below-market sham transactions with Pearson Education in order to lower the basis upon which the authors' royalties are calculated." (Compl. ¶ 16.)

Under New York law, to state a claim for tortious interference with contract, the plaintiff must allege "(1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages." Antonios A. Alevizopoulos & Assocs. v. Comcast Int'l Holdings, Inc., 100 F. Supp. 2d 178, 186 (S.D.N.Y. 2000); see Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006) (including "actual breach of the contract" as an element). "In addition, the plaintiff must assert that defendant's actions were the 'but for' cause of the alleged breach of contract — that is, that there would not have been a breach but for the activities of the defendant." Antonios A. Alevizopoulos & Assocs., 100 F. Supp. 2d at 186.

These allegations fail to state a claim for intentional interference with contract because Plaintiffs do not allege that Pearson PLC and Pearson, Inc. committed any specific act that caused Pearson Education to breach the publishing agreements. Plaintiffs' conclusory allegations that Pearson PLC and Pearson, Inc. interfered with the publishing agreements by participating in the alleged sale practices are insufficient to show that Pearson PLC and Pearson, Inc. intentionally sought to interfere with the publishing agreements, and that Pearson PLC or Pearson, Inc.'s conduct was the but for cause of Pearson Education's alleged breach of the publishing agreements. Therefore, Plaintiffs fail to state a claim of liability against Pearson PLC and Pearson, Inc.[6]

---

[6] During the August 11, 2015 status conference, this Court orally dismissed this claim but permitted Plaintiffs to file a motion for leave to amend. Such a motion will be granted only if the amendment is not futile See Lucente v. IBM, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

## IV. Conclusion

Defendants' Motion to Strike the Class Allegations is DENIED. Defendants' partial motion to dismiss certain allegations in support of Plaintiffs' breach of contract claim is DENIED.

Plaintiffs' breach of implied covenant of good faith and fair dealing and intentional interference with contract claims are dismissed. Defendants Pearson PLC and Pearson, Inc. are dismissed from this case.

The Clerk of Court is directed to close the motion at ECF No. 14.

Dated: August 31, 2015
      New York, New York

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge